Mr. Clerk, will you call the first case, please? Or this case, please? 3-12-10-0854. Harland Bank & Trust Company. Ability by Thomas Harward v. David A. Coors and Leonard E. Goers. Appellant, 7-0-5. Mr. Clerk? May it please the Court, Counsel. This case arises from citation enforcement proceedings of a judgment in the Peoria County Circuit Court. In this case, the trial court ordered a third-party non-debtor trustee to turn over certain assets held to the judgment creditor, Hartland Bank, which were allegedly fraudulently transferred under the Uniform Fraudulent Transfer Act, specifically Section 6 that the bank had elected to proceed under. There are various questions, primarily questions of law, arising as to whether the bank proved its claim under the statute in order to get at these assets. This is a fairly brief and simple record. There was no testimony presented to the court. There was a deposition of the judgment debtor, David Goers, that was taken, and the transcript was submitted along with a number of paper exhibits, documents of different kinds, and those were submitted to the court along with written memorandum and argument. There are three assets, in essence, that were in the hands of the trustee that were ordered transferred to the judgment creditor by the court. One is the home of Mr. Goers and his wife. One is the Smith Barney investment accounts, and one is the credit union accounts at the SEFCU Credit Union in Peoria. There are some specific questions as to individual assets as well as one position we've raised which could apply to all of them across the board. Initially, I note that counsel in its appellee's brief has raised the question of waiver in the sense that some of our points or arguments were not raised in the trial court, and as outlined in the reply brief, I think that to the extent that these are all questions of law, the facts are not disputed facts. We have Mr. Goers' testimony in written form in front of the trial court as well as the exhibits, and really I think all critical facts were agreed upon, or at least not. There's no findings of the court as to specific facts that are disputed here. It's just a question of law. These go to the issue of whether or not the bank has proven its case under the act, and I think this court certainly has the power and should exercise the power to consider these questions in order to maintain a sound, uniform body of law as well as to make sure that the right thing has been done here. Our argument with respect to the home is relatively simple, namely that the home as an asset that was owned by Mr. Goers and his wife for a number of years, in fact since they acquired it, as tenants by the entirety is an accepted with an EX item under the definitions of the UFTA. In essence, the UFTA requires that you show first of all that there was a transfer of an asset and an interest in tenancy by the entirety is specifically removed from the coverage of the UFTA by the definitional section. And as such, it was simply not subject to fraudulent transfer. And it makes sense because in the hands of the tenants by the entirety, a judgment creditor who has a judgment against only one of the tenants cannot get at that property. It's not subject to process, not subject to sale for the individual debtor's obligations. They could lien it. Well, that's even a question. They could certainly file a lien. I don't think it's clear at all whether or not a lien would be effective. And as far as I can see, there's no Illinois law in that case. The statute doesn't specifically say that, Your Honor, one way or the other. Counsel has cited a bankruptcy decision from Judge Perkins in Peoria in which he acknowledges that there is no Illinois law on it. He ends up finding in a different context, not in a UFTA claim, that he thought a lien was possible. That's the only law that I've seen of. And as we suggest in our reply brief, that's not binding on this Court. And frankly, in terms of this context, the Uniform Fraudulent Transfer Act claim, which was not at all at issue in that case, I think this Court is free to take a further look. And I think if you look at the language of the UFTA, the definitional section on assets, says that an interest in tenancy by the entirety is not an asset for purposes of this act to the extent that it's not subject to process. And clearly, as I am reading the law, it is not subject to process. A lien is not process. Process is typically a summons or a citation or something like that, and the procedure that follows that. So I think if you look at the definition, it says that the interest that he had back in August 2009 and for years prior to that was not an asset under terms of the UFTA. And it was protected from seizure by the creditors, so there's no reason to treat it. You can't fraudulently transfer something that the creditor couldn't have got at anyway. And I think, I believe we cited a case or two that make that point in general, in other contexts, that an asset that the creditor wouldn't have a right against anyway is not something that could be fraudulently transferred. The creditor is not losing something there. And again, because the definition says if it's not subject to process, it's not an asset, and that's the case here, then we don't believe the house is an asset that could be subject of a Section 6 claim under the UFTA, which was the only basis that the bank raised for trying to get at it in the hands of the trustee. We've also raised the issue of whether or not any of the transfers to the trust can be disregarded, excuse me, under the doctrine of the Apollo real estate investment case. We believe that case holds clearly and without reservation that when a claim of some type is pursued to judgment and a judgment is entered, the judgment now becomes a claim. It's a new claim. It's not the same. It's based on the same facts, but as a judgment, it's a new and different animal through the doctrine of merger. And the Apollo case holds that a Section 6 claim brought after, or I should say, a transfer that occurred prior to the time of the judgment being entered, albeit, of course, after the initial claim arose, is not subject to treatment under Section 6 because of the fact that the transfer occurred prior to the time that the claim at that point seeking to be enforced was in issue or was in existence. The bank has suggested in its brief, well, wait a minute, the bank had a claim all along, and, yeah, they did. They had, there was some dispute as to when that claim came into existence, but I think without question it came into existence, as this court found, no later than September 11th, I believe, of 2009. And when I say this court found, that was, of course, in the appeal of the original judgment that counsel has referenced. The, at that point, the bank did call the note that the corporate principle had on which Mr. Goers was a guarantor, and certainly by that time the claim arose. We've argued that there was no claim even prior to that. That's certainly a debatable prospect, and each side has raised its arguments on that issue. But clearly the judgment didn't exist at that point, and the judgment, in fact, did not exist for over another year, and well over a year after the transfer in this case. Counsel has suggested in its brief that the Apollo cases should be distinguished because of the fact that in that case the party who was seeking to enforce the judgment was actually an assignee of the original judgment creditor. I don't see anything in that case that suggests that that's a distinction that makes a difference, any more than the fact that the creditor, the original creditor in that case may have been named Jones and the one in our case was named Smith. I just don't see anything there that logically suggests that that was an important factor or a factor at all in the court's ruling. And I think the case holds, as a matter of law, that the judgment is a new claim, and I'm not suggesting it may well be that the bank could have taken some action under Section 6 of UFTA prior to judgment when it still had its original claim pending, had they been aware of the transfer, or even just to take other protective action. They may have had some opportunity to do that at that time, but they didn't. They were trying to enforce a judgment. And the judgment as a claim coming into existence after the transfer, we think under the Apollo case, any of the trust property in question, which was all transferred in August of 2009, is not reachable under Section 6 of the UFTA. Do you think that the bank's insecurity level would rise to the level of a claim? I don't know, Your Honor. That's a good question. I think the definition of claim is certainly made to be fairly broad, but again, I think you run into the same problem that I believe the bank does in this case, is that whatever claims may have existed prior to and whatever time they may have come into existence at the time the guarantee was signed, which was one argument they made, or when they could have found a default or when they actually declared a default or the existence of a security interest, those could all be possibilities. But once that was reduced to judgment, once they have a judgment, that's now under the Apollo case, I believe, that's a new claim, and the efforts to enforce that judgment are something new and different. So the last item that was transferred was the funds in the SEFCU account, or the last item that was turned over. And this is a little different, peculiar, too, in that the only evidence submitted by the bank through the citation testimony of Mr. Goers is that in August of 2009, he and his wife transferred about $39,000 in change from a SEFCU account they had to a SEFCU account in the name of the trust. Thank you. They made that transfer. He testified that over the next period of what would have been approximately 15 months or so, sometime within that time, all of those funds were spent on household expenses and things like that, which there's nothing incredible about that, because at that point he was unemployed, so that could easily have been spent long before that period of time was over. In any event, he testified to that under oath. There's nothing to contradict that. And then he said that towards the end of 2010, over a year later, and in early 2011, his wife's mother made several gifts to the trust so they could continue to have money to use, and that the $19,000 in change that was in the account at that point in March of 2011 was the remainder of those gifts. Our position is that the bank has not proven that that money, the $19,000, was in fact money that was transferred back 18 months, 19 months earlier in August of 2009. In fact, the testimony shows that it's not. It's money from gifts that the mother-in-law made, his mother-in-law made, to the trust. So they're not entitled to get that now. They come back and say, well, but wait a minute, there's the lowest intermediate balance rule. As we point out in our brief, we've not seen that used in the context of this type of a claim before, but to the extent that it would be appropriate, the cases make clear this is an artificial tracing method. What it essentially says is if you have some funds that are questionable and then later you add legitimate money, we're going to assume, because the initial fraudulent money was put in, we're going to assume that as long as there's X amount of money in that account, that that's going to be what we consider as reachable by the creditor, but the bank as the creditor has to prove what the lowest amount ever was because that's all they're entitled to. In this case, there was no evidence, and we've cited cases where they have to introduce the bank statements, which they had requested in the citation, but they didn't do that. Mr. Fleming, your time is up. Yes, thank you. Mr. Howard? May it please the Court? Counsel? Counsel. I do want to touch on the lowest intermediate balance rule just briefly. We did put it before the trial court. We did not provide the documentation, but that documentation was turned over to us with discovery, and the lowest intermediate balance rule was not raised by the appellant until his reply brief, and so I think Rule 341H7 would prevent him from arguing that. He does raise an issue about whether or not those funds were reachable in his brief, but not specifically the intermediate balance rule, which is how this is actually decided. The transferred funds go into an account. They sink to the bottom of the account. Money goes in and out, and so long as the amount transferred never dips below that, those funds are preserved. It's a common-sense rule based upon the fungible nature of money. And then to start off with some presumptions, the trial court is presumed to be correct, and it's up to the appellant to point out reversible error because of manifest weight of the evidence, and there was a prejudicial error. And even if there are gaps in the record, case in point, these bank statements not being produced, those gaps can still be presumed to be for the trial court level. And, again, if there's any other reason to support the trial court's rule, it should be upheld. For example, we moved both for Sections 5 and 6 of the Uniform Fraud and Transfer Act, which sometimes I'll refer to as the UFTA to save time, and it was granted under Section 6 of the UFTA. But if there's sufficient evidence in the record to support a finding under Section 5, that would also suffice. Speaking about the UFTA, specifically Section 6, it is a fraud and loss section which has three principal parts. First, a claim. A claim is a very broad definition, and even in the definition it says whether or not reduced to judgment. And the bank that I represent had a claim that is a right to payment upon the default of Ross Advertisement, which this court has held, happened on June 30, 2009, and thus it triggered Mr. Gore's guarantee liability for approximately $700,000. And that was their claim date, their right to payment. My client had a right to payment on that date. The date of signing? The date of the default of the primary allegory. The date of the default of Ross Advertisement on June 30. And when was that again? June 30, 2009. So you're not saying the claim arose by the entering into a guarantee agreement? No. The rights of a guarantor and their obligations come into effect upon the default of the primary allegory. I thought I heard the closing counsel say that was one argument. In our brief, we do cite to the earlier appellate decision that found that Ross Advertisement was in default on June 30, 2009, and it also cites a case that says that the secondary, that the guarantor's liability arises upon the default of the primaries. The second thing is a transfer for no value, which Mr. Gore has admitted. Now it was held in tenancy by the entirety, which I will sometimes refer to as TBTE because I am under time constraints and it's short. Tenancy by the entirety can only be transferred by both tenants. So both tenants signed this property over to the Gore's trust and Ms. Gore's individual for no value, which he testifies. And finally, the transfer happened at the time that the transfer war was insolvent or he became insolvent as a result of the transfer. And because of his guarantee liability due to the default of the primary, Ross Advertisement, he was insolvent at that time. And this property, of course, is a tenancy by the entirety or a TBTE property, which since it's almost before lunch, I was not going to use the bundle of sticks analogy. I was going to use a cheeseburger analogy, and a cheeseburger would be your joint tenancy, and a bacon cheeseburger would be your tenancy by the entirety. You can have your bun, which we'll call the contingent remainder interest. You can have your lettuce and tomatoes, which we would say are those the rights to enjoy the profits and the rents. You have your burger, which would be the right to exclusively use and possess. And then in the case of tenancy by the entirety, you have the bacon, which is the statutory exemption for forced sale for the debts of only one spouse, which is found in 5-12-112 of the Illinois Code of Civil Procedure, and only the middle paragraph of that. Now, tenancy by the entirety is very difficult to get because according to the Conveyances Act, it must be specifically on the deed. Husband, wife, tenancy by the entirety. It's only available to husbands and wives, and it's only available for the homestead. However, if they move, the casebook in here before us was about a divorce. If they divorce, if one of them dies, or even if they garner income from the property, all of these are, well, the income does not, but those will ruin the tenancy by the entirety. And we get into the definition now of asset. And under Section 162B3, the asset for which he is claiming to be exempt, it's property held in tenancy by the entirety, not subject to process by a creditor holding a claim against only one. I don't think that process means execution. I think that the creation of a judicial lien is a process. I also think that if you go to Section 5-12-112, you will see various processes that the tenancy by the entirety property is clearly subject to. For example, you're not allowed to create a tenancy by the entireties for the sole purpose of defrauding your creditors. And then the last sentence says that any income derived from a tenancy by the entirety is reachable by a creditor even for the debts of only one spouse. But clearly we have a situation here where this wasn't created to defraud a creditor since it was created years before the guaranteed situation even arose. Correct, correct. And so you have this property then that, I mean, you say that even a lien would be subject to process. I mean, that is the type of process. So isn't, by definition then, the best that your client could get for a property held by tenancy in the entirety is a lien against Mr. Gower's interest? That's right. They could get a lien against the cash value of Mr. Gower's contingent remainder interest in the case that the tenancy spoils through death, divorce, or moving. Or what if they're running a bed and breakfast? What if they have a tenant? Any income that's derived. What if they have a home-based business? They could also get that income through the garnishment process. It's the last sentence of Section 5-12-112. All of those have been transferred. They transferred the entire bacon cheeseburger into the Gower's trust. So while the bank has no right now to wait in line, to queue up according to its priority rights from recording its memorandum of judgment in the county in which the property resides. So I think that the definition of process and the not subject to process is not solely the execution on the property. That is the forced judicial sale. I think there are other processes that I identify in my brief, which means that when he transferred the entire property right, he went beyond the exemption. And for example, what if they would have transferred it because they're holding it as tenancy by the entirety just by themselves. What if they would have transferred it into the trust and still maintain the tenancy by the entirety? Then I believe that would have been an exempt transfer. But that's not what they did. They entirely dropped him off. And now it's only hers or the trust fund. Moving on to the doctrine of merger. So I think that kind of addresses the definition. Now, with merger, it is to prevent the relitigation of a similar issue. And one of the exceptions to the merger doctrine dealt with a contract that was reduced to judgment.  And they said, well, you can no longer get the attorney's fees because all the terms of the contract have emerged in the judgment. And the court said, no, that's an ancillary matter that they're allowed to address. This isn't just an ancillary matter. This is an entirely new cause of action. Now, we have a creditor who had a claim. Whether or not it was reduced to judgment, he reduced that claim to judgment. Through supplemental proceedings and a deposition, a transfer was discovered. Now they say, well, the only claim that they have is the judgment. Well, that's just not true. Otherwise, the definition wouldn't say whether or not it's reduced to judgment. We also cited a couple of cases, the Weller v. Schulte case and the McConey cases. The key of the cause of action for Section 6 is when that claim arose for them. My client had a claim that is a right to payment on June 30, 2009. That's the cause of action they're trying to prove. At that time, they had a right to pay. This is fundamentally distinguishable from Apollo. That is an asceny of a judgment. When does an asceny of a judgment have their claim arise? They didn't have a claim until the judgment was entered and then they purchased it. So their claim is based not upon the contracts but upon the judgment. So we don't have that here, and I think that's a very distinguishable concept that really kind of explains it. Just think about the implications of Section 6 of the UFTA in fraud and law. It would essentially be neutered. You would have to have clairvoyance as a creditor to understand that something has been fraudulently transferred prior to trying to enforce your own contractual rights through lawsuits, for example, because my client had that right to payment, that claim. It was not being paid, so it had to get a judgment, and then after it got a judgment, it had to go and do a deposition pursuant to supplementary proceedings, and that's when it finally discovered that this transaction had happened. And I think that's a very key distinction. An asceny of a judgment is not the original creditor, and the merger doctrine is only supposed to apply to bar the relitigation of the same cause of action. This is an entirely different cause of action with an entirely different claim. The claim is the right to payment, and an asceny of a judgment has no right to payment until the judgment had been entered, and conceivably after they had already paid for that judgment and it's been assigned to them. Attorney, to this house, even if we say, yes, it was a fraudulent transfer, doesn't then it revert back to its original instrument of ownership? Well, according to Section 11 of the UFTA, it complements common law, and what we would have is we would have two things that are butting heads, status quo ante, reverting it back, versus what the letter of the law says under Section 8. So once a creditor has proven his case under the UFTA, Section 8 is the remedy section, and then the creditor has allowed to elect the remedy. My client elected the sale of the property because it already had a judgment, and that remedy was granted. They requested status quo ante, which means to revert the property back. So we have the statutory language butting heads with the common law. Both cannot be carried into effect. It's impossible to both put the property back and sell the property pursuant to the statute. And in that case, the statute should control because that's what Section 11 provides for. And I believe we also cited the Maxwell v. Baroness case regarding that one court refused to permit the reversion of fraudulently transferred property. So I hope that clarifies and answers your question. In regards to the lowest union balance rule, once again, I didn't see that raised until the reply brief, so I think Supreme Court Rule 341H7 would bar that argument. We did request that relief pursuant to the lowest union balance rule at the trial court level. What we did not do was then file with the court all the bank documents that we received. However, absence of evidence is not the evidence of absence, and the presumption is in favor of the trial court level. And with that, I will conclude with we've found some processes. Process is not execution. There's the lien creation process. There's also the garnishment process against any income. Merger is only supposed to bar relitigation of the same issues. It's an entirely different issue. Claim cannot be truncated to mean two things. There's the preexisting claim and then the other claim. Otherwise, you're going to effectively neuter Section 6. Because many creditors do not find out about these types of transfers. Fraudulent transfers aren't something that you call your bank up and say, hey, I'm about to get rid of all my stuff. FYI, you might want to file under Section 6. Thank you, Your Honors. Excuse me. Thank you, Mr. Howard and Mr. Fleming. Thank you, Your Honors. A couple of brief points here. First of all, the June 30, 2009 date, as counsel, as I understand, suggests that this is the date of default. That's not and that this court said that. I read the opinion. That's not what the court said. The court observed that the bank could have concluded at that time. They could have concluded in July that the corporate debtor was in default as of that time. But the fact of the case is, as this court's opinion says, is that it was in September, I think the 11th of September, that the bank, in fact, did declare a default and called the note due. Again, that's only relevant if we're getting into this issue of whether that onset date affects the existence of the claim prior to judgment. If the court finds that the claim didn't even come about until September 11th when the default occurred, then the transfer was clearly before that. We've raised that point. I think that there's certainly some law to indicate that the claim could have risen before that, whether it be in June or, again, even all the way back to when the guarantee was signed. But, again, our principal point is that under Apollo, the judgment is a new claim. We're not saying they didn't have a claim before. We're saying the judgment is a new claim because of merger, and at that point the transfers had already been done. I look at their argument with respect to the tenancy by the entirety as an effort to kind of avoid the plain meaning of the statute. If Mr. Gore's interest in the tenancy by the entirety was not accepted from the operation of the statute, then I don't even know what they've got that provision accepting tenancy by the entirety for. I don't know what else it would apply. And the court can't and shouldn't issue a ruling that effectively negates a legislative provision. I mean, this is an obvious case for it to apply as far as I can see. So, finally, with respect to the lowest intermediate balance, again, this is their case. They had to prove that the funds in the hands of the trustee were fraudulently transferred by the debtor. They attempted to use the lowest intermediate balance rule because they didn't have apparently direct proof. It was up to them to introduce evidence into court. The record is clear that they didn't introduce that evidence. So the general standard about presuming the trial court is correct, where the record is clear that the trial court didn't have this evidence, this court has everything that the trial court had. There's no bank statements in there, maybe one or two, but not according to the cases we've cited. They've got to introduce the whole bash so they can say, in this case, $19,000 in sum was the lowest balance that was ever in that account. They didn't do that. So there's no presumption in that, and this court should step in and correct that mistake along with the others. Thank you. And thank you, Mr. Fleming, and thank you both for your argument today. We will take this matter under advisement and get back to you with a written disposition in a very short time.